UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

BEVERLY ZIEMOORE,                                   :

                Plaintiff,      :      17 Civ. 4621 (GHW) (AJP)

       -against-       :      **REPORT & RECOMMENDATION**

NANCY A. BERRYHILL,                                 :
Acting Commissioner of Social Security,
                            :

               Defendant.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Gregory H. Woods, United States District Judge:**

           Pro se plaintiff Beverly Ziemoore brings this action pursuant to § 205(g) of the Social

Security Act, 42 U.S.C. § 405(g), challenging the final decision of the Commissioner of Social

Security denying her application for Supplemental Security Income ("SSI").  (Dkt. No. 2: Compl.)

Presently before the Court is the Commissioner's motion for judgment on the pleadings pursuant to

Fed. R. Civ. P. 12(c).  (Dkt. No. 16: Comm'r Notice of Mot.)  Ziemoore has not responded to the

Commissioner's motion, and the time to do so has passed.  (See Dkt. No. 6: Scheduling Order.)  For

the reasons set forth below, the Commissioner's motion for judgment on the pleadings (Dkt. No. 16)

should be GRANTED.

## FACTS

### Procedural Background

           Ziemoore filed for benefits on November 12, 2013, alleging a disability onset date

of September 1, 2000.  (Dkt. No. 15: Administrative Record ("R.") 61-62, 118-26.)  On November

19, 2015, Ziemoore, proceeding pro se, had a hearing before Administrative Law Judge ("ALJ") Dina R. Loewry (R. 21-31), who denied Ziemoore's benefits application on February 3, 2016 (R. 7-17).  ALJ Loewry's decision became the Commissioner's final decision when the Appeals Council denied review on April 19, 2017.  (R. 1-3.)

**Non-Medical Evidence and Testimony**

Born on April 23, 1960, Ziemoore was forty years old at the alleged September 1, 2000 onset of her disability and fifty-five at the time of the ALJ hearing.  (R. 26, 61-62.)  At the beginning of the hearing, ALJ Loewry informed Ziemoore of her right to be represented by an attorney or a non-attorney, but Ziemoore waived her right to counsel and the hearing proceeded. (R. 24-25.)  Ziemoore testified that she is 5'3" and weighs about 160 pounds.  (R. 26.)  For approximately one year, Ziemoore had been treated for HIV by Dr. Kim Chung at Lincoln Hospital. (Id.)  Prior to that, she was treated at the Bronx-Lebanon Martin Luther King Center.  (Id.)  In the prior three years, Ziemoore went to the emergency room at Lincoln Hospital, but was not admitted or hospitalized.  (R. 27.)

Ziemoore testified that she is disabled and unable to work due to "severe" back and hip pain, and HIV, which prevent her "from doing a lot of things."  (R. 28.)  Ziemoore stopped working in 1983 because she was laid off.  (R. 135, 145.)  She was diagnosed with HIV in September 2000.  (R. 135, 145.)

Despite receiving a referral for physical therapy to treat her back and hip pain, Ziemoore has never gone.  (R. 28.)  The cause of Ziemoore's back pain is unknown; however, she testified "that maybe the weight is what's making [her] back hurt."  (Id.)  Ziemoore takes pain medication, which makes her "grogg[y]."  (Id.)  Ziemoore testified that she has no other problems besides HIV, but that everything she is going through has made her depressed, although she is not

receiving any treatment for depression.  (R. 29.)  Ziemoore asserted that she can stand for "maybe ten or 15 minutes" and can walk for "about a block" before having to "stop, rest."  (R. 30.) Additionally, Ziemoore stated that she can sit for "about ten or 15 minutes at a time," but has to change positions due to lower back pain.  (Id.)  Finally, Ziemoore testified that she "don't carry nothing" and when she goes shopping, she puts everything in her cart because she "can't carry the bags."  (Id.)

Ziemoore lives alone and took the bus to the hearing.  (R. 27.)  She graduated high school, but does not work.  (Id.)  Ziemoore receives HASA[1] assistance and has Medicaid.  (Id.) During the day, Ziemoore is "basically . . . in [her] bed, because half of the time [she] can't get up," and when she is not in bed, Ziemoore is "trying to make it to [her] doctors' appointments."  (R. 28.) Ziemoore goes shopping once a month and does her own laundry using her washing machine at home.  (Id.)  Ziemoore has one son who is thirty years old.  (R. 30.)

Ziemoore did not attend a consultative examination scheduled by the SSA in connection with her application for benefits.  (R. 29.)  When asked why she missed the appointments, Ziemoore claimed that she was unaware of them (id.); however, the record reflects that when the office called Ziemoore to remind her of her first appointment, she could not be reached (R. 63).  After missing the initial appointment, Ziemoore was contacted, stated she did not

---

[1]    See NYC Human Resources Administration, HIV/AIDS Services, https://www1.nyc.gov/site/_hra/help/hiv-aids-services.page ("HASA assists individuals living with AIDS or HIV illness to live healthier, more independent lives.  The program can help clients with individualized service plans to target necessary benefits and provide support that is specific to their medical situation and that will enhance their well-being. HASA clients receive ongoing case management and are assigned to a caseworker at one of our HASA centers, located in all 5 boroughs.  HASA services include intensive case management and assistance in applying for public benefits and services . . . .").

know why she missed her appointment, rescheduled for one week later, was given the date, time and location of the visit, and was warned about the potential implications if she failed to show.  (R. 63.)

Vocational expert Peter Manzi was available to testify by phone at Ziemoore's hearing, but he was not asked to do so.  (R. 23, 30-31.)

**Medical Evidence Before the ALJ**

**Evidence Prior to the Relevant Period**

**Morris Heights Health Center**

Ziemoore was diagnosed with HIV in 2000.  (See R. 276.)  From March 2007 through June 2011, Ziemoore received treatment at Morris Heights Health Center for HIV (see, e.g., R. 202, 207), sore throats (R. 193, 215, 219, 324), body aches (R. 193, 324, 384, 423, 494), left ear aches (R. 215, 223, 231), left-side facial drooping (R. 221, 223, 234), left-side jaw pain (R. 225), sinusitis or nasal congestion (R. 269, 276), numbness of the right hand (R. 301), flu-like symptoms (R. 324), headaches and chest pain while coughing (R. 329) and a cough (R. 384-85, 461).  During this time, Ziemoore was diagnosed with Bell's Palsy (R. 221), otitis media (R. 231), tinnitus status post Bell's Palsy (R. 259), chronic nasal congestion (R. 280), pneumonia (R. 299), and upper respiratory infection or bronchitis (R. 329, 399, 424), in addition to her prior HIV diagnosis (R. 225).

In April 2007, Ziemoore's HIV was stable.  (R. 210.)  However, in July 2007, Ziemoore stated that she had not been compliant with her medication.  (R. 237-38.)  In October 2007, Ziemoore's HIV became unstable.  (R. 246.)  Ziemoore stated that she had not taken her HIV medication for approximately one month because her pharmacy was downtown and she had not been in the area to pick up her prescription.  (R. 235.)  In March 2008, Ziemoore had been compliant with her HIV medication and the HIV was stable.  (R. 261.)  However, in April 2008, Ziemoore failed

to take her HIV medication for three weeks, causing her HIV-1 RNA viral load to surpass the desired range. (R. 266.) After adhering to medication, Ziemoore's HIV became stable again in September 2008. (R. 298.)

In March 2009, Ziemoore's HIV was unstable and additionally, in May 2009, various HIV-related blood counts were out of range, including her HIV-1 RNA viral load. (R. 343.) There were no medication compliance issues noted during these two appointments. (R. 333-34.) In August 2009, Ziemoore reported no complaints, but numerous HIV-related blood counts surpassed the desired range, including her HIV-1 RNA viral load. (R. 353.) In January, April, June, October and December 2010, Ziemoore's HIV-1 RNA viral loads indicated adequate suppression of her HIV. (R. 372, 382, 409, 437, 456.) However, in June 2011, Ziemoore's HIV-1 RNA viral loads rose again. (R. 489.)

On April 8, 2008, Ziemoore was seen by PA Julius Nwosu. (R. 254.) Nwosu noted that Ziemoore had a history of tenosynovitis in her right wrist, headaches, bilateral foot pain, Bell's Palsy, and HIV. (Id.) Ziemoore's Bell's Palsy began the prior year, but she had not taken her medication for about three weeks. (R. 254, 266.) The Otorhinolaryngology department conducted a physical examination and found that Ziemoore's hearing was within normal limits. (R. 257-59.)

On June 27, 2008, Ziemoore reported having a cough, wheezing, shortness of breath and chest tightness. (R. 281.) She stated that she smoked about three to four cigarettes a day. (Id.)

**Bronx Lebanon Hospital**

On May 28, 2013, Ziemoore went to Bronx Lebanon Hospital for a medication refill and blood work. (R. 502.) She denied having any uncontrolled pain, but complained of ringing in her left ear for six years, since having Bell's Palsy. (Id.) Additionally, Ziemoore stated that her back pain was stable. (Id.) She was not in any acute distress and was told to take Claritin for her ear.

(R. 504.) Despite the tinnitus, Ziemoore had no difficulty hearing. (R. 503.) Ziemoore exhibited para spinal tenderness, but her "last episode" of lower back pain was in November 2012. (R. 505.) She was prescribed Vicodin and nabumetene. (R. 504.)

On October 8, 2013, Ziemoore walked alone to the hospital for a medication refill and laboratory work. (R. 497.) She told Dr. Amparo Ramirez that her abdomen had become bigger over the last few months, but denied having any abdominal pain. (Id.) Physical examinations were within normal limits and indicated that Ziemoore was not in any distress. (R. 498.) Additionally, a gastrointestinal examination was normal. (Id.) Ziemoore was given a referral for an ultrasound of her abdomen and received a flu shot. (R. 499.)

On October 17, 2013, Ziemoore walked alone to the hospital for a follow-up visit. (R. 494.) Ziemoore was not in any acute distress, reported no uncontrolled pain, and stated that she had been smoking for thirty years. (R. 495.) She had not yet done the abdominal ultrasound and a physical examination indicated that her abdomen was soft and non-tender. (Id.) Ziemoore reported that she had a back sprain, which occurred on October 18, 2012. (R. 502.) Additionally, Ziemoore had a "CD4 > 1000" and her "HIV viral load [was] going up." (R. 495.)

### Evidence from the Relevant Period (November 12, 2013 - February 3, 2016)

### Lincoln Medical and Mental Health Center

On November 22, 2013, Ziemoore was seen at Lincoln Medical and Mental Health Center for an allergic reaction and was prescribed prednisone. (R. 507.) Similarly, on December 16, 2013, Ziemoore returned to Lincoln Medical and was diagnosed with allergic urticarial (hives). (R. 506.) She was prescribed prednisone and diphenhydramine, and was referred to an allergist. (Id.) On December 23, 2013, Ziemoore returned, complaining of lip swelling after taking the HIV medication Epzicom. (R. 581-82.) Nonetheless, Ziemoore's physical examination was normal, and

she was in no acute distress; she was diagnosed with HIV and benign essential hypertension. (R. 582-83.)

During a routine visit in January 2014, Ziemoore reported feeling better and had no complaints. (R. 584-86.) In March 2014, Ziemoore complained of itchiness in her eyes and nose, and soreness in the left lateral tongue. (R. 587-88.) Her physical examination was otherwise normal. (R. 588.) In June 2014, Ziemoore had no complaints and her physical examination again was normal. (R. 593-94.) In August 2014, Ziemoore went to the emergency room complaining of mild right hand pain lasting two days. (R. 616, 619.) Ziemoore's physical examination was otherwise normal and she reported being independent in her activities of daily living. (R. 616.)

On September 17, 2014, Ziemoore complained of urinary frequency for the past two to three months, and tongue soreness on and off for two months. (R. 599.) Ziemoore's physical examination otherwise was normal. (R. 599-600.) On September 23, 2014, Ziemoore reported that her tongue soreness had subsided, but she still was experiencing urinary frequency. (R. 602-03.) Again, physical examination showed no abnormalities. (Id.)

On October 9, 2014, Ziemoore complained of worsening facial swelling and hives. (R. 578.) On October 24, 2014, Ziemoore underwent a colonoscopy, revealing normal findings. (R. 563.) In November 2014, Ziemoore presented with complaints of congestion and she was diagnosed with allergic rhinitis. (R. 547.) Besides congestion and itchy eyes, Ziemoore's physical examination was normal. (R. 575.) On December 19, 2014, Ziemoore complained of tinnitus and itching in her left ear, although her Bell's Palsy had resolved several months prior. (R. 571.) Again, Ziemoore's physical examination was otherwise normal. (R. 572-73.)

During a routine visit on January 15, 2015, Ziemoore complained of upper back pain on the left side. (R. 605.) Upon physical examination, mild tenderness in the left trapezius area was

noted. (R. 606.) On April 3, 2015, Ziemoore went to the emergency room reporting pain in her neck and shoulder "for years." (R. 623.) A physical examination of the shoulder was normal and no neurological deficits were found. (R. 624.) Ziemoore was discharged and diagnosed with cervicalgia and neck strain after a "benign exam." (Id.) On April 13, 2015, Ziemoore's complaint of moderate left shoulder pain persisted. (R. 612, 627.) She underwent an x-ray of her left shoulder, which came back "negative" or normal. (R. 628, 560.) It revealed no acute fracture or dislocation, nor evidence of calcific tendinitis. (R. 560.)

Ziemoore's HIV-1 RNA viral loads in March (<20 copies/mL), May (20.8 copies/mL), June (20 copies/mL) and September 2014 (<20 copies/mL), and in January (<20 copies/mL) and February 2015 (<20 copies/mL), indicated adequate suppression of her HIV. (See R. 527, 534, 540, 557, 589, 595, 601, 610.) Additionally, Dr. Kim Chung completed a medical request for home care on September 24, 2015. (R. 170.) Despite diagnosing Ziemoore with chronic HIV and depression, Dr. Chung did not recommend an aid "to assist with personal care and/or light housekeeping tasks" and stated that Ziemoore is able to self-administer her medications. (R. 171.)

**ALJ Loewry's Decision**

On February 3, 2016, ALJ Loewry denied Ziemoore's application for benefits. (R. 7-17.) ALJ Loewry applied the appropriate five step legal analysis. (R. 11-12.) First, she found that Ziemoore "has not engaged in substantial gainful activity since November 12, 2013, the application date." (R. 12.) Second, ALJ Loewry found that Ziemoore had "the following medically determinable impairments: HIV, Bell's palsy, tinnitus, and hypertension." (Id.) In finding Ziemoore's impairments non-severe, ALJ Loewry wrote that "since these conditions did not result in more than minimal limitations in [Ziemoore's] ability to perform basic work functions, the

undersigned finds them nonsevere within the meaning of the Social Security Act and regulations." (Id.)

Third, ALJ Loewry found that Ziemoore did "not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, [Ziemoore] does not have a severe impairment or combination of impairments (20 CFR 416.921 et seq.)." (R. 12-13.) Accordingly, ALJ Loewry ended her analysis at step three. (R. 12-17.)

ALJ Loewry found that Ziemoore's "medically determinable impairments could reasonably be expected to produce the alleged symptoms," but Ziemoore's complaints as to the "intensity, persistence and limiting effects of these symptoms" were "not entirely credible." (R. 14.) ALJ Loewry stated that "the record does not contain objective medical evidence of clinical findings, outside of diagnoses, confirming the existence of a severe impairment." (R. 16.) Further, "review of the evidence does not support the allegation that [Ziemoore's] limitations were so severe that she could not perform any work activity; diagnoses in and of themselves do not create marked, functional, clinical limitations." (Id.)

Additionally, ALJ Loewry noted that despite Ziemoore's testimony "that she is unable to work due to severe back and hip pain, a review of her medical records does not indicate reports of same being made to health care providers." (Id.) Moreover, Ziemoore failed to attend consultative examinations scheduled for February 10, 2014 and February 18, 2014, despite records indicating telephone contact to remind her of the appointments. (R. 14.) Further, in the Field Office Disability Report, it was noted that "no physical limitations were observed." (Id.)

Finally, ALJ Loewry opined that Ziemoore's "allegations that she was significantly restricted are not substantiated by the medical evidence of record" and were additionally weakened

by the fact that Ziemoore has not worked since 1983.  (R. 16.)  Although the onset of Ziemoore's

HIV was in 2000, "there is no work history for the 15 years prior."  (Id.)  ALJ Loewry concluded

that Ziemoore's "impairment did not significantly limit [her] ability to perform basic work

activities," and she "did not have a severe impairment."  (Id.)  ALJ Loewry concluded that Ziemoore

had not been "under a disability, as defined in the Social Security Act, since November 12, 2013,

the date the application was filed (20 CFR 416.920(c))."  (R. 16.)

## ANALYSIS

## I.    THE APPLICABLE LAW

### A.    Definition Of Disability

A person is considered disabled for Social Security benefits purposes when he is

unable "to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can

be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A),

1382c(a)(3)(A); see, e.g., Barnhart v. Thomas, 540 U.S. 20, 23, 124 S. Ct. 376, 379 (2003); Barnhart

v. Walton, 535 U.S. 212, 214, 122 S. Ct. 1265, 1268 (2002); Impala v. Astrue, 477 F. App'x 856,

857 (2d Cir. 2012).[2/]

---

[2/]    See also, e.g., Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109, 111 (2d Cir. 2010); Betances v. Comm'r of Soc. Sec., 206 F. App'x 25, 26 (2d Cir. 2006); Surgeon v. Comm'r of Soc. Sec., 190 F. App'x 37, 39 (2d Cir. 2006); Rodriguez v. Barnhart, 163 F. App'x 15, 16 (2d Cir. 2005); Malone v. Barnhart, 132 F. App'x 940, 941 (2d Cir. 2005); Butts v. Barnhart, 388 F.3d 377, 383 (2d Cir. 2004), amended on other grounds, 416 F.3d 101 (2d Cir. 2005); Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002); Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir. 2002); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999); Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996).

An individual shall be determined to be under a disability only if [the combined effects of] his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see, e.g., Barnhart v. Thomas, 540 U.S. at 23, 124 S. Ct. at 379; Barnhart v. Walton, 535 U.S. at 218, 122 S. Ct. at 1270.[3/]

In determining whether an individual is disabled for disability benefit purposes, the Commissioner must consider: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam).[4/]

## B.    Standard Of Review

A court's review of the Commissioner's final decision is limited to determining whether there is "substantial evidence" in the record as a whole to support such determination. E.g., 42 U.S.C. § 405(g); Giunta v. Comm'r of Soc. Sec., 440 F. App'x 53, 53 (2d Cir. 2011).[5/] "'Thus,

---

[3/]    See also, e.g., Salmini v. Comm'r of Soc. Sec., 371 F. App'x at 111; Betances v. Comm'r of Soc. Sec., 206 F. App'x at 26; Butts v. Barnhart, 388 F.3d at 383; Draegert v. Barnhart, 311 F.3d at 472; Shaw v. Chater, 221 F.3d at 131-32; Rosa v. Callahan, 168 F.3d at 77; Balsamo v. Chater, 142 F.3d at 79.

[4/]    See, e.g., Brunson v. Callahan, No. 98-6229, 199 F.3d 1321 (table), 1999 WL 1012761 at *1 (2d Cir. Oct. 14, 1999); Brown v. Apfel, 174 F.3d at 62.

[5/]    See also, e.g., Prince v. Astrue, 514 F. App'x 18, 19 (2d Cir. 2013); Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109, 111 (2d Cir. 2010); Acierno v. Barnhart, 475 F.3d 77, 80-81 (2d Cir.), cert. denied, 551 U.S. 1132, 127 S. Ct. 2981 (2007); Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004); Jasinski v. Barnhart, 341 F.3d 182, 184 (2d Cir. 2003); Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. (continued...)

the role of the district court is quite limited and substantial deference is to be afforded the Commissioner's decision.'" Morris v. Barnhart, 02 Civ. 0377, 2002 WL 1733804 at *4 (S.D.N.Y. July 26, 2002) (Peck, M.J.).[6]

The Supreme Court has defined "substantial evidence" as "'more than a mere scintilla [and] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971); accord, e.g., Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013); Rosa v. Callahan, 168 F.3d at 77; Tejada v. Apfel, 167 F.3d at 773-74.[7] "[F]actual issues need not have been resolved by the [Commissioner] in accordance with what we conceive to be the preponderance of the evidence." Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), cert. denied, 459 U.S. 1212, 103 S. Ct. 1207 (1983). The Court must be careful not to "'substitute its own judgment for that of the [Commissioner], even if

---

[5] (...continued)
2000); Brown v. Apfel, 174 F.3d 59, 61 (2d Cir. 1999); Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991); Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam); Dumas v. Schweiker, 712 F.2d 1545, 1550 (2d Cir. 1983).

[6] See also, e.g., Florencio v. Apfel, 98 Civ. 7248, 1999 WL 1129067 at *5 (S.D.N.Y. Dec. 9, 1999) (Chin, D.J.) ("The Commissioner's decision is to be afforded considerable deference; the reviewing court should not substitute its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a de novo review." (quotations & alterations omitted)).

[7] See also, e.g., Halloran v. Barnhart, 362 F.3d at 31; Jasinski v. Barnhart, 341 F.3d at 184; Veino v. Barnhart, 312 F.3d at 586; Shaw v. Chater, 221 F.3d at 131; Brown v. Apfel, 174 F.3d at 61; Perez v. Chater, 77 F.3d at 46.

it might justifiably have reached a different result upon a de novo review.'" Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991).[8/]

The Court, however, will not defer to the Commissioner's determination if it is "'the product of legal error.'" E.g., Duvergel v. Apfel, 99 Civ. 4614, 2000 WL 328593 at *7 (S.D.N.Y. Mar. 29, 2000) (Peck, M.J.); see also, e.g., Douglass v. Astrue, 496 F. App'x 154, 156 (2d Cir. 2012); Butts v. Barnhart, 388 F.3d 377, 384 (2d Cir. 2004), amended on other grounds, 416 F.3d 101 (2d Cir. 2005); Tejada v. Apfel, 167 F.3d at 773 (citing cases).

The Commissioner's regulations set forth a five-step sequence to be used in evaluating disability claims. 20 C.F.R. §§ 404.1520, 416.920; see, e.g., Barnhart v. Thomas, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003); Bowen v. Yuckert, 482 U.S. 137, 140, 107 S. Ct. 2287, 2291 (1987). The Supreme Court has articulated the five steps as follows:

> Acting pursuant to its statutory rulemaking authority, the agency has promulgated regulations establishing a five-step sequential evaluation process to determine disability. If at any step a finding of disability or nondisability can be made, the SSA will not review the claim further. [1] At the first step, the agency will find nondisability unless the claimant shows that he is not working at a "substantial gainful activity." [2] At step two, the SSA will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." [3] At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. [4] If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. [5] If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.

---

[8/] See also, e.g., Campbell v. Astrue, 465 F. App'x 4, 6 (2d Cir. 2012); Veino v. Barnhart, 312 F.3d at 586.

Barnhart v. Thomas, 540 U.S. at 24-25, 124 S. Ct. at 379-80 (fns. & citations omitted).[9]

      The claimant bears the burden of proof as to the first four steps; if the claimant meets the burden of proving that he cannot return to his past work, thereby establishing a prima facie case, the Commissioner then has the burden of proving the last step, that there is other work the claimant can perform considering not only his medical capacity but also his age, education and training.  See, e.g., Barnhart v. Thomas, 540 U.S. at 25, 124 S. Ct. at 379-80.[10]

## II.   APPLICATION OF THE FIVE STEP SEQUENCE

### A.   Ziemoore Was Not Engaged In Substantial Gainful Activity

      The first inquiry is whether Ziemoore was engaged in substantial gainful activity after her application for SSI.  "Substantial gainful activity" is defined as work that involves "doing significant and productive physical or mental duties" and "[i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.  ALJ Loewry's conclusion that Ziemoore did not engage in substantial gainful activity during the applicable time period (see page 8 above) is not disputed and benefits Ziemoore. (See generally Dkt. No. 17: Comm'r Br.)  The Court therefore proceeds with the analysis.

---

[9]   Accord, e.g., Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012); Rosa v. Callahan, 168 F.3d at 77; Tejada v. Apfel, 167 F.3d at 774; see also, e.g., Jasinski v. Barnhart, 341 F.3d at 183-84; Shaw v. Chater, 221 F.3d at 132; Brown v. Apfel, 174 F.3d at 62; Balsamo v. Chater, 142 F.3d 75, 79-80 (2d Cir. 1998); Perez v. Chater, 77 F.3d at 46; Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir. 1995); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).

[10]   See also, e.g., Selian v. Astrue, 708 F.3d at 418; Betances v. Comm'r of Soc. Sec., 206 F. App'x 25, 26 (2d Cir. 2006); Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003); Rosa v. Callahan, 168 F.3d at 80; Perez v. Chater, 77 F.3d at 46; Berry v. Schweiker, 675 F.2d at 467.

**B.**     **Ziemoore Did Not Demonstrate "Severe" Impairments That Significantly Limited Her Ability To Do Basic Work Activities**

The second step of the analysis is to determine whether Ziemoore proved that she had a severe impairment or combination of impairments that "significantly limit[ed her] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). "Basic work activities" include:

> walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling . . . seeing, hearing, and speaking . . . [u]nderstanding, carrying out, and remembering simple instructions . . . [u]se of judgment . . . [r]esponding appropriately to supervision, co-workers and usual work situations . . . [d]ealing with changes in a routine work setting.

20 C.F.R. § 404.1522(b)(1)-(6).

ALJ Loewry determined that Ziemoore's impairments were HIV, Bell's Palsy, tinnitus and hypertension. (See page 8 above.) However, she concluded that these impairments were not "severe" and accordingly ended her analysis at step three. (See pages 8-9 above.) The Court reviews the four alleged impairments.

**1.     Human Immunodeficiency Virus**

ALJ Loewry found that Ziemoore's HIV positive status was not a severe impairment. (See pages 8-9 above.) The record indicates that Ziemoore's HIV was controlled, and additionally fails to indicate any functional limitations due to the diagnosis. ALJs are "entitled to rely not only on what the record says, but also on what it does not say." Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983).[11/] Ziemoore's HIV-1 RNA viral loads indicated adequate suppression of her

---

[11/]     Accord, e.g., Salvaggio v. Apfel, 23 F. App'x 49, 51 (2d Cir. 2001) (lack of medical evidence supports the ALJ's determination that plaintiff was not disabled); O'Connor v. Shalala, No.
(continued...)

HIV[12] (see pages 4-8 above), and she was never hospitalized due to complications stemming from her HIV infection. Further, Ziemoore's CD4 cell levels were generally normal and the record reflects them to be below 1,000 cells/mm$^3$.[13] (R. 494.) In forming her conclusion, the ALJ considered all of the evidence and determined that "[t]he record does not contain objective medical evidence of clinical findings, outside of diagnoses, confirming the existence of a severe impairment." (R. 16.) Accordingly, ALJ Loewry's conclusion that Ziemoore's HIV did not

---

[11] (...continued)
96-6215, 111 F.3d 123 (table), 1997 WL 165381 at *1 (2d Cir. Mar. 31, 1997) ("[T]he Commissioner is also entitled to rely on the absence of contemporaneous evidence of the disability."); Diaz v. Shalala, 59 F.3d 307, 315 (2d Cir. 1995); Rutherford v. Schweiker, 685 F. 2d 60, 63 (2d Cir. 1982) (The ALJ stated that "medical evidence does not show that [diabetes, arthritis, hypertension and mild respiratory disorder] impose significant limitations upon the claimant's ability to perform basic work-related functions," and that there was an "absence of evidence of any other severe impairment" from these medical issues); Vasquez v. Berryhill, 16 Civ. 6707, 2017 WL 1592761 at *15 n.21 (S.D.N.Y. May 1, 2017) (Peck, M.J.) ("Even if the Clay Avenue records contained no specific finding as to Vasquez's ability to handle stress, ALJ Walters appropriately found that the records as a whole documented no more than moderate limitations, and thus undermined a finding of marked limitation in this regard."); Rodriguez v. Colvin, 15 Civ. 8390, 2016 WL 1178780 at *10 (S.D.N.Y. Mar. 25, 2016) (Peck, M.J.); Soto v. Colvin, 14 Civ. 7440, 2015 WL 1726541 at *19 (S.D.N.Y. Apr. 14, 2015) (Peck, M.J.) (The ALJ "was entitled to rely on that absence of evidence"); Johnston v. Colvin, 13 Civ. 2710, 2015 WL 657774 at *5 n.3 (S.D.N.Y. Feb. 13, 2015) ("As the Second Circuit has noted, the absence of evidence from the claimed period of disability may itself be considered substantial evidence."), R. & R. adopted, 2015 WL 1266895 (S.D.N.Y. Mar. 18, 2015).

[12] See, e.g., U.S. Dep't of Veteran Affairs, HIV/AIDS: If the Viral Load is Undetectable, Can You Stop Treatment?, https://www.hiv.va.gov/patient/treat/undetectable-viral-load.asp ("Having a viral load below levels that laboratory tests can measure (this is called a suppressed viral load, or sometimes an 'undetectable' viral load) tells us that the anti-HIV medications are working.").

[13] See, e.g., U.S. Dep't of Health & Human Services, Lab Tests and Why They Are Important, https://www.hiv.gov/hiv-basics/staying-in-hiv-care/provider-visits-and-lab-test/lab-tests-and-results (the normal range for a CD4 count is from 500 to 1,600 cells/mm$^3$); id. ("A CD4 count is a good measure of your risk of opportunistic infections and an indicator of how well your immune system is working.").

constitute a severe impairment is supported by substantial evidence. See, e.g., Castro v. Apfel, 189 F.3d 460, 460 (2d Cir. July 30, 1999) (table) ("Social Security benefits are not available for a positive HIV status unless it is accompanied by one of various related disorders listed under 20 C.F.R. pt. 404, subpt. P, app. 1, § 14.08(A)-(N)."); Ferreira v. Berryhill, 16 Civ. 6772, 2017 WL 2398705 at *10 (S.D.N.Y. June 2, 2017) (Peck, M.J.) (holding HIV alone not a severe impairment), R. & R. adopted, 2017 WL 4949842 (S.D.N.Y. Oct. 27, 2017).

### 2. Bell's Palsy

Despite Ziemoore suffering from Bell's Palsy, she reported on December 19, 2014 that movement of her face was "completely restored," although she still experienced "some numbness." (R. 571.) The record does not reflect any impairment as a result of Ziemoore's Bell's Palsy. Rather, the medical evidence establishes that the condition was successfully treated and besides tinnitus, no lasting side effects resulted. (See pages 4-8 above.) ALJ Loewry's conclusion that Ziemoore's Bell's Palsy was not a severe impairment is supported by substantial evidence. See, e.g., Burgess v. Colvin, 15 Civ. 9585, 2016 WL 7339925 at *8 (S.D.N.Y. Dec. 16, 2016) (The ALJ "noted that Burgess has a history of Bell's Palsy but there is no indication that it has caused significant limitations in his ability to work, and therefore it is not severe.").

### 3. Tinnitus

Despite Ziemoore's complaints of ringing and itching in her left ear, her medical records did not indicate that this affected her health or her ability to work. (See R. 215, 223, 231, 502, 504.) Ziemoore's hearing had not been impacted at all and testing done on both her left and right ear yielded identical results and normal hearing. (R. 572.) The records indicate that Ziemoore's tinnitus likely was caused by her Bell's Palsy, which eventually resolved. (See pages 4-8 above.) The record is further devoid of any medical evidence to support Ziemoore's claim of

an inability to work due to tinnitus; the ringing in Ziemoore's ear may be bothersome, but it is not disabling. ALJ Loewry was entitled to rely on the absence of records indicating otherwise to form her conclusion as to Ziemoore's tinnitus. (See cases cited on page 15 n.11 above.) Additionally, 20 C.F.R. Pt. 404, Subpt. P, App. 1, only mentions tinnitus as a secondary effect of another condition, such as Meniere's disease. Under 20 C.F.R. Pt. 404, Subpt. P, App.1 § 2.07(1)(B), hearing loss, established by audiometry, is a requirement for the underlying condition to be considered a severe impairment. Since the record reflects Ziemoore's hearing and daily living were not affected by the residual ringing, ALJ Loewry's conclusion that Ziemoore's tinnitus was not a severe impairment is supported by substantial evidence. See, e.g., Brown v. Colvin, No. 14-CV-2411, 2015 WL 4878480 at *6 n.5 (E.D.N.Y. Aug. 14, 2015) ("Tinnitus is a noise or ringing in the ears. It is not a condition itself, but a symptom of an underlying condition.").

### 4. Hypertension

There is no medical evidence that Ziemoore's hypertension affected her health. (See, e.g., R. 582, 600, 606, 609, 614.) Rather, Ziemoore's diagnosis at Lincoln Medical and Mental Health Center was of "benign essential hypertension." (See pages 6-7 above.) Further, Ziemoore's chief complaints never included hypertension related problems. (See generally pages 4-8 above.) ALJ Loewry was entitled to rely on the absence of record evidence to form her conclusion as to Ziemoore's hypertension. (See cases cited on page 15 n.11 above.) Additionally, 20 C.F.R. Pt. 404, Subpt. P, App.1 states:

> Because hypertension (high blood pressure) generally causes disability through its effects on other body systems, we will evaluate it by reference to the specific body system(s) affected (heart, brain, kidneys, or eyes) when we consider its effects under the listings. We will also consider any limitations imposed by your hypertension when we assess your residual functional capacity.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.00(H)(1). The record fails to establish that Ziemoore's hypertension "cause[d] disability through its effect on [her] other body systems," including, for example, her heart. O'Dell v. Colvin, 16 Civ. 368, 2016 WL 6882861 at *19 (S.D.N.Y. Nov. 22, 2016) (Peck, M.J.). Substantial evidence supports ALJ Loewry's conclusion that Ziemoore's hypertension was not a severe impairment. See also, e.g., Davilar v. Comm'r of Soc. Sec., No. 15-CV-7200, 2017 WL 1232490 at *4 (E.D.N.Y. Mar. 31, 2017) (because plaintiff's benign hypertension was controlled, "the ALJ's determination that Plaintiff's hypertension was not a severe impairment was supported by the record.").

### C. Ziemoore's Claims Regarding The Extent Of Her Symptoms Are Not Entirely Credible

#### 1. Legal Standards Governing Credibility Determinations

Because subjective symptoms only lessen a claimant's RFC where the symptoms "'can reasonably be accepted as consistent with the objective medical evidence and other evidence,' the ALJ is not required to accept allegations regarding the extent of symptoms that are inconsistent with the claimant's statements or similar evidence." Moulding v. Astrue, 08 Civ. 9824, 2009 WL 3241397 at *7 (S.D.N.Y. Oct. 8, 2009) (citation & emphasis omitted).[14] In addition, "courts must

---

[14] See, e.g., Campbell v. Astrue, 465 F. App'x 4, 7 (2d Cir. 2012) ("As for the ALJ's credibility determination, while an ALJ 'is required to take the claimant's reports of pain and other limitations into account,' he or she is 'not require[d] to accept the claimant's subjective complaints without question.' Rather, the ALJ 'may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record.'" (citations omitted)); Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010); Brown v. Comm'r of Soc. Sec., 310 F. App'x 450, 451 (2d Cir. 2009) ("'Where there is conflicting evidence about a claimant's pain, the ALJ must make credibility findings.'"); Rivers v. Astrue, 280 F. App'x 20, 22 (2d Cir. 2008) (same); Thompson v. Barnhart, 75 F. App'x 842, 845 (2d Cir. 2003) (ALJ properly found that plaintiff's "description of her symptoms was at odds with her treatment history, her medication regime, and her daily routine"); Snell v. Apfel, 177 F.3d 128, 135 (2d Cir. 1999); Norman v. Astrue, 912 F. Supp. 2d 33, 85 (S.D.N.Y. 2012) ("It is (continued...)

show special deference to an ALJ's credibility determinations because the ALJ had the opportunity to observe plaintiff's demeanor while [the plaintiff was] testifying." Marquez v. Colvin, 12 Civ. 6819, 2013 WL 5568718 at *7 (S.D.N.Y. Oct. 9, 2013).[15/] Thus, "[i]f the [Commissioner's] findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints." Aponte v. Sec'y, Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984) (citations omitted).

When an ALJ determines that a claimant's own statements regarding her symptoms are not supported by the record, that "determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator

---

[14/]     (...continued)
'within the discretion of the [Commissioner] to evaluate the credibility of plaintiff's complaints and render an independent judgment in light of the medical findings and other evidence regarding the true extent of such symptomatology.'"); Astolos v. Astrue, No. 06-CV-678, 2009 WL 3333234 at *12 (W.D.N.Y. Oct. 14, 2009) (ALJ properly determined that plaintiff's subjective pain complaints were not supported by the medical record); Speruggia v. Astrue, No. 05-CV-3532, 2008 WL 818004 at *11 (E.D.N.Y. Mar. 26, 2008) ("The ALJ 'does not have to accept plaintiff's subjective testimony about her symptoms without question' and should determine a plaintiff's credibility 'in light of all the evidence.'"); Soto v. Barnhart, 01 Civ. 7905, 2002 WL 31729500 at *6 (S.D.N.Y. Dec. 4, 2002) ("The ALJ has the capacity and the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of pain alleged by the claimant."); Brandon v. Bowen, 666 F. Supp. 604, 608 (S.D.N.Y. 1987) (same).

[15/]     Accord, e.g., Campbell v. Astrue, 465 F. App'x at 7 ("[W]e have long held that '[i]t is the function of the [Commissioner], not ourselves, . . . to appraise the credibility of witnesses, including the claimant.'"); Nunez v. Astrue, 11 Civ. 8711, 2013 WL 3753421 at *7 (S.D.N.Y. July 17, 2013); Guzman v. Astrue, 09 Civ. 3928, 2011 WL 666194 at *7 (S.D.N.Y. Feb. 4, 2011); Ruiz v. Barnhart, 03 Civ. 10128, 2006 WL 1273832 at *7 (S.D.N.Y. May 10, 2006); Gernavage v. Shalala, 882 F. Supp. 1413, 1419 & n.6 (S.D.N.Y. 1995); Mejias v. Soc. Sec. Admin., 445 F. Supp. 741, 744 (S.D.N.Y. 1978) (Weinfeld, D.J.); Wrennick v. Sec'y of Health, Educ. & Welfare, 441 F. Supp. 482, 485 (S.D.N.Y. 1977) (Weinfeld D.J.).

gave to the individual's statements and the reasons for that weight."  SSR 96-7p, 1996 WL 374186

at *2 (July 2, 1996).[16/]

      The regulations set out a two-step process for assessing a claimant's statements about

pain and other limitations:

> At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. . . .  If the claimant does suffer from such an impairment, at the second step, the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record.  The ALJ must consider statements the claimant or others make about his impairment(s), his restrictions, his daily activities, his efforts to work, or any other relevant statements he makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony in its administrative proceedings.

Genier v. Astrue, 606 F.3d at 49 (quotations, citation & brackets omitted) (citing 20 C.F.R.

§§ 404.1529(a), 404.1529(b), and the now-superseded SSR 96-7p).

---

[16/]    In March 2016, the SSA released SSR 16-3p, which provides updated guidance on evaluating a claimant's assertions about the work-preclusive nature of her symptoms.  See generally SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016); see also, e.g., Duran v. Colvin, 14 Civ. 8677, 2016 WL 5369481 at *13 n.27 (S.D.N.Y. Sept. 26, 2016) ("SSR 16-3p supersedes SSR 96-7p, 1996 WL 374186 (July 2, 1996), and clarifies the policies set forth in the previous SSR.").  SSR 16-3p, however, was not made retroactive and the Court therefore applies SSR 96-7p as the ruling in effect at the time of the ALJ's decision in this case.  See, e.g., Crampton v. Comm'r of Soc. Sec., No. 16-CV-0356, 2017 WL 2829515 at *6 n.3 (N.D.N.Y. June 29, 2017); Smith v. Colvin, No. 14-CV-1752, 2016 WL 1170910 at *7 n.3 (D. Conn. Mar. 23, 2016).  In any event, the substance of the two-step process for evaluating claimants' symptoms discussed herein was not modified by SSR 16-3p.  Accord SSR 16-3p, 2016 WL 1119029 at *3-4; see also, e.g., Burgess v. Colvin, 15 Civ. 9585, 2016 WL 7339925 at *11 (S.D.N.Y. Dec. 19, 2016) (citing SSR 16-3p for an explanation of the two-step process for assessing claimants' statements about their symptoms).  Rather, SSR 16-3p's updated guidance is a matter of emphasis: whereas SSR 96-7p "placed a stronger emphasis on the role of the adjudicator to make a 'finding about the credibility of the individual's statements about the symptom(s) and its functional effects' . . . S.S.R. 16-3p espouses a more holistic analysis of the claimant's symptoms, and 'eliminate[s] the use of the term "credibility"' from sub-regulation policy."  Acosta v. Colvin, 15 Civ. 4051, 2016 WL 6952338 at *18 (S.D.N.Y. Nov. 28, 2016).

###### a.       <u>Human Immunodeficiency Virus</u>

Ziemoore claims she is disabled due to her HIV diagnosis.  (R.  61.)  The record does not support Ziemoore's claim for a number of reasons.  First, Ziemoore testified that she has not worked since 1983.  (R. 16.)  This undercut Ziemoore's assertion that her inability to work began in 2000, following her HIV diagnosis.   Second, Ziemoore is entirely independent in her daily activities.  (<u>See</u> pages 4-8 above.)  She travels alone to her doctors' appointments, took the bus alone to her hearing, and does her own laundry.  (<u>See</u> page 3 above.)  Moreover, Ziemoore's treating physician, Dr. Chung, stated in a medical request for home care on September 24, 2015 that Dr. Chung did not recommend an aid "to assist with personal care and/or light housekeeping tasks" and stated that Ziemoore is able to self-administer her medications.  (R. 171.)   Additionally, since Ziemoore's HIV diagnosis, her condition generally has been stable, excluding the months that she failed to take her medication.  (<u>See</u> pages 4-8 above.)  The record further indicates that Ziemoore has not been hospitalized due to her HIV.  In forming her conclusion, the ALJ considered all of the evidence and determined that "[t]he record does not contain objective medical evidence of clinical findings, outside of diagnoses, confirming the existence of a severe impairment."  (R. 16.)  Accordingly, ALJ Loewry's conclusion regarding Ziemoore's HIV is supported by the record evidence.

###### b.       <u>Back and Hip Pain</u>

Ziemoore testified that she believes she is unable to work due to "severe back pain [and] hip pain," which "prevent[s] [her] from doing a lot of things."  (R. 28.)  ALJ Loewry concluded that "a review of [Ziemoore's] medical records does not indicate reports [of back and hip

pain] being made to health care providers." (R. 16.)[17] The Court similarly finds no evidence in the record supporting Ziemoore's claim that her back and hip pain rendered her unable to work. Ziemoore was diagnosed with a sprained back, but the pain stabilized. (See, e.g., R. 502.) Ziemoore's physical examinations, which were generally conducted a minimum of every two months, never revealed abnormal findings. (Id.) Additionally, neither an MRI or x-ray were done of Ziemoore's back and bilateral hips, and her last reported episode of lower back pain was in November 2012. (R. 505; see page 6 above.)

### c.      Failure to Attend Consultative Examination

Moreover, Ziemoore failed to attend her consultative examination. The SSA determined that a consultative examination was necessary because "the evidence as a whole, both medical and non-medical, [was] not sufficient to support a decision on the claim." (R. 64.) At the hearing, Ziemoore stated that she was unaware of her appointment with a consultative examiner. (R. 29.) However, the record indicates otherwise. Ziemoore had an initial appointment for a consultative examination scheduled for February 10, 2014. (R. 63.) She was called to be reminded of her appointment, but did not answer. (R. 188.) After missing the first appointment, Ziemoore was contacted and claimed that she could not recall why she missed the appointment. (R. 63.) She then scheduled a second appointment for February 18, 2014. (Id.) Ziemoore missed the second appointment, despite being given the date, time and location information, and having been warned about the potential implications if she failed to show. (Id.)

---

[17]      Nevertheless, as to Ziemoore's back pain, ALJ Loewry found that Ziemoore's "medically determinable impairments could reasonably be expected to produce the alleged symptoms," since back pain is a common side effect of HIV. (R. 14); see, e.g., U.S. Dep't of Veteran Affairs, HIV/AIDS: Low Back Pain, https://www.hiv.va.gov/provider/manual-primary-care/low-back-pain.asp; U.S. Dep't of Veteran Affairs, HIV/AIDS: Fatigue, https://www.hiv.va.gov/patient/side-effects-guide/fatigue.asp.

Under 20 C.F.R. § 416.918, titled "If you do not appear at a consultative examination," the SSA makes explicitly clear that "[i]f you are applying for benefits and do not have a good reason for failing or refusing to take part in a consultative examination or test which we arrange for you to get information we need to determine your disability . . . [the Agency] may find that you are not disabled." "[W]here claimants have refused to acknowledge, attend, or cooperate at scheduled consultative examinations or have failed to argue that they had good reasons for not attending such examinations, courts have rejected claims that the ALJ failed to develop the record." Matta v. Colvin, 13 Civ. 5290, 2016 WL 524652 at *10 (S.D.N.Y. Feb. 8, 2016); see also, e.g., Stephens v. Astrue, No. 08-CV-0400, 2009 WL 1813258 at *8 (N.D.N.Y. June 25, 2009). Thus, because Ziemoore had no viable excuse for her absence, any claim that ALJ Loewry failed to develop the record is meritless.

Considering the totality of the medical evidence, ALJ Loewry was justified in concluding that Ziemoore's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible. (R. 14.)

## CONCLUSION

For the reasons set forth above, the Commissioner's determination that Ziemoore was not disabled within the meaning of the Social Security Act is supported by substantial evidence. Accordingly, the Commissioner's motion for judgment on the pleadings (Dkt. No. 16) should be GRANTED.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be

filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Gregory H. Woods, 500 Pearl Street, Room 2260, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Woods (with a courtesy copy to my chambers). Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Ingram v. Herrick, 475 F. App'x 793, 793 (2d Cir. 2012); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).


Dated:          New York, New York
                November 7, 2017

                                        Respectfully submitted

                                        _____
                                        **Andrew J. Peck**
                                        United States Magistrate Judge


Copies to:          Counsel (ECF)
                    Ms. Ziemoore (mail)
                    Judge Gregory H. Woods